COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Huff, Judges Alston and Russell
Argued at Alexandria, Virginia


MICHAEL ANTHONY YOUNG

                                           MEMORANDUM OPINION* BY
v.        Record No. 0265-17-4        JUDGE ROSSIE D. ALSTON, JR.
                                                 MARCH 20, 2018

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Stephen E. Sincavage, Judge

Catherine French, Chief Appellate Counsel (Virginia Indigent
Defense Commission, on briefs), for appellant.

Christopher P. Schandevel, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Michael Anthony Young (appellant) argues that his right to a speedy trial was violated

pursuant to Code § 19.2-243. He specifically contends that neither the enumerated continuance

exception nor an implied exception to Code § 19.2-243 excuses the Commonwealth's delay in

timely prosecuting appellant. We disagree.

BACKGROUND

On November 25, 2015, appellant and Lorenzo Huffman (Huffman) allegedly robbed a

minor, D.C. Among the items taken were D.C.'s iPhone and money. Appellant and Huffman

left the scene in a vehicle driven by S.K. D.C.'s father called 911 to report the robbery. Deputy

Osborn first responded to the call, and upon his arrival, began interviewing D.C. Deputy Osborn

recorded D.C.'s responses through handwritten notes. Deputy Cote then responded to the

scene--he was wearing a body camera. From that point forward, the interview was captured on

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

tape. As D.C.'s interview was taking place, a vehicle matching the description of the vehicle used by the assailants in the robbery was stopped. Inside were S.K., Huffman, and appellant. Huffman and appellant denied involvement and were taken into custody. Later that evening, Huffman and appellant were interrogated in separate rooms by Detective Cunningham. Upon realizing that the recording software malfunctioned, Detective Cunningham briefly interviewed Huffman and appellant again, capturing those interviews on her cell phone. Appellant was charged with robbery (Count 1), conspiracy to commit robbery (Count 2), grand larceny (Count 3), conspiracy to commit a felony (Count 4), and false identification to law enforcement (Count 5). The case was to be heard before the Juvenile and Domestic Relations District Court of Loudoun County (J&DR court) due to D.C.'s minor status. Appellant filed a motion for discovery on December 4, 2015. The Commonwealth provided appellant open file discovery on December 22, 2015. Appellant requested additional information thought to be contained in the file. The Commonwealth then provided the 911 call made by D.C.'s father, which occurred one hour after the alleged robbery. On January 14, 2016, the Commonwealth produced the following evidence: Deputy Cote's body camera footage, recordings of Detective Cunningham's interviews with appellant and Huffman, an analysis of S.K.'s phone, an analysis of appellant's phone, and photographs. The Commonwealth further provided appellant with the ability to review and take notes on Detective Cunningham's report. The preliminary hearing scheduled to be heard on January 20, 2016 was continued on appellant's motion to allow him time to review the evidence.

On February 3, 2016, appellant requested additional information, including an analysis of D.C.'s phone, written statements by Huffman, as well as the substance of the unrecorded statements made by Huffman and appellant in their unrecorded interviews. The parties appeared before the J&DR court on February 10, 2016. Appellant again inquired about the status of an

analysis of D.C.'s phone and was advised that the sheriff's office took the phone, that Deputy Butler met with D.C. to examine the phone's content, that D.C. could not remember the required passcode, and that the phone was then returned to D.C. The Commonwealth represented to appellant that no other analysis had been done. The case was continued on a joint motion to March 2, 2016. On February 21, 2016, appellant requested via email additional discs the Commonwealth was copying for appellant. The Commonwealth responded that appellant had most of them except for footage from Deputy Roque's body camera and Deputy Selby's cruiser. The Commonwealth then allowed appellant to view the footage from Deputy Roque as it was unable to be copied and produced the footage from Deputy Selby.

The preliminary hearing occurred on March 2, 2016. Appellant's robbery charge (Count 1) was bound over to be heard by the grand jury. Appellant was directly indicted on Counts 2-5. The Commonwealth then informed appellant that Deputy Butler was unsuccessful in evaluating D.C.'s phone and subsequently forwarded appellant an email exchange between Deputy Butler and the Commonwealth dated March 6. At the March 15, 2016 scheduling hearing before the Circuit Court of Loudoun County (trial court), the trial court asked when speedy trial circumstances would be implicated. The Commonwealth responded that it was August 2, 2016. By agreement, the cases were set for a jury trial on August 1-3, 2016. The trial court then ordered that appellant would be held without bond pending trial. On the same date, the trial court entered a discovery order, directing the Commonwealth to complete discovery within 30 days and further stated that the Commonwealth had a continuing obligation to "timely provide" evidence in compliance with Brady v. Maryland, 377 U.S. 83 (1963), and its progeny.

Appellant filed a Brady motion on May 10, 2016. On May 31, 2016, the trial court heard that motion in addition to several others. The Commonwealth agreed to provide a written response by June 3. The Commonwealth complied and noted that there were issues in acquiring

some of the requested information. Appellant emailed the Commonwealth on June 16, 2016 again requesting information related to the case, such as Huffman's statements to Deputy Cunningham, Huffman's written statement, and initial descriptions given to Deputy Osborn. The Commonwealth responded on June 22, indicating that the information was forthcoming. By June 29, appellant still had not received the requested information, so appellant again contacted the Commonwealth and received the same reply. The parties appeared for a hearing on appellant's motion to compel on July 7, 2016. There, the Commonwealth produced Deputy Cote's and Deputy Osborn's handwritten notes. The Commonwealth stated that the sheriff's office was unable to locate Huffman's written statement.

Also on July 7, the Commonwealth for the first time provided over 1,000 recorded telephone calls made by appellant while incarcerated. On July 12, appellant was given access to Huffman's statements. Appellant was also informed for the first time that there was a certificate of analysis completed on D.C.'s phone. Results were "inconclusive" when comparing the found latent print to appellant's fingerprints. Appellant complained that this late disclosure prevented appellant from additional investigation of the phone as it was ultimately returned to D.C. On July 14, the Commonwealth responded to appellant's motion for discovery and inspection and provided appellant a recording of a July 13 "proffer session" with Huffman; Huffman had agreed to the proffer session with the Commonwealth and to testify against appellant in exchange for a lighter sentence. The session was supposed to occur on June 1. Huffman provided inconsistent statements in his proffer. Appellant filed a motion to dismiss the indictments on July 15, 2016, arguing that appellant is "forced . . . to choose between his right to a speedy trial and his right to the effective assistance of counsel" due to the Commonwealth's discovery failures.

On July 19, 2016, the trial court heard appellant's motion to dismiss in which appellant argued that the Commonwealth's alleged discovery violations merited dismissal. The

Commonwealth acknowledged that its most egregious failure was not divulging the certificate of analysis on D.C.'s phone. The Commonwealth noted that law enforcement personnel indicated that no analysis had been done on D.C.'s phone and that the Commonwealth had relied on that statement. The Commonwealth recalled receiving the certificate but not when. The certificate was dated January 26. The Commonwealth had previously represented to appellant on multiple occasions that no such analysis had been done. The Commonwealth suggested a stipulation or a continuance as remedies but argued that dismissal was not appropriate. The Commonwealth also suggested granting a bond and continuing the case would be appropriate to put appellant "at liberty."

Conversely, appellant argued for dismissal. Appellant noted that the Commonwealth's late disclosures forced appellant to choose between asserting "his rights to a speedy trial [or] go[ing] to trial on August 1 and be[ing] unprepared and put[ting] himself in a position to not be able to redevelop his defense . . . [and] reinvestigate his case." Appellant stated on two occasions that if the trial court did not grant the motion to dismiss "regardless of whatever other remedies the [trial c]ourt chooses to fashion . . . , [appellant's] position is . . . that we're certainly not in a position to go forward with trial on August 1." The trial court then took the matter under advisement and continued the hearing to July 25, 2016 for its ruling.

In its ruling, the trial court found that this was not "a comprehensive failure to provide discovery but because of the way the discovery has occurred or not occurred, it [i]s clear that concerns such that [appellant] has brought to the [trial court's] attention . . . are valid concerns." The trial court denied the motion to dismiss but sanctioned the Commonwealth for its discovery violations; the Commonwealth was prohibited from using the jail calls for any purpose, and it was bound by its stipulation offer regarding the certificate of analysis. Appellant reiterated that

he should not be required "to forfeit his rights to a speedy trial in light of his rights to have the information that he's entitled to." The following colloquy ensued:

> THE COURT: [I]t's a practical concession that bond would need to be granted.
>
> [COMMONWEALTH]: I wouldn't oppose that at this time, Your Honor.
>
> [APPELLANT]: It's not really a solution for [appellant] because he is being held on other matters . . . . So setting a bond in this case will actually do nothing to provide him any liberty.

When discussing the trial date, appellant proposed that the scheduling hearing be held on August 15. He indicated that by suggesting this date, "[Appellant] is [not] now agreeing that this [delay] . . . would be attributable to [him] because [he is] asking to use the 15th." Appellant again noted that bond was a "hollow remedy . . . [and] that anything short of dismissal would, in fact, not be appropriate." The Commonwealth inquired as to whether appellant was asking for a continuance. Appellant replied that "given the nature of the information, the quality of the information[,] and even with the [trial court's] rulings, . . . [appellant is] certainly not in a position to go forward even if a response came in." And appellant argued that attributing the delay to him would be "fundamentally unfair" in light of the Commonwealth's errors. The trial court ultimately said "I do not count this as a defense motion." The trial court denied the motion to dismiss and removed the matter from the trial docket.

Appellant filed two additional motions to dismiss Count 1 and Counts 2-5 on August 8 and 15 due to the Commonwealth's alleged speedy trial violations (speedy trial motions). The speedy trial motions were heard on August 24, 2016. Appellant calculated the speedy trial deadlines: because "Count [1] [was] . . . bound over and the remaining counts [were the subject of] a direct indictment, the 153rd day [was] August 3rd for Count I and the 153rd day [was] August 15th for Counts [2] through [5]." Appellant argued that at the July 25 ruling, the trial

court stated that it did not attribute the continuance to appellant. Appellant detailed continuing issues with the Commonwealth's supplemental discovery after it was sanctioned by the trial court. Appellant further suggested that the statutory five-month speedy trial provision applied because although bond was discussed, the Commonwealth did not formally move for bond nor did the trial court formally offer it. He then argued that the Commonwealth's discovery violations were egregious, which resulted in appellant not being "prepared for trial [on August 1]." Appellant contended that the trial court continued the case or removed it from the docket due to the Commonwealth's actions, and thus the delay should be attributed to the Commonwealth. Consequently, appellant argued that his right to a speedy trial was violated.

The Commonwealth indicated that it did not move for a continuance. The Commonwealth highlighted that appellant "state[d] twice that [he was] not going to be prepared on August 1[]" at the July 19 hearing. And while the trial court did say in its July 25 ruling that it was not charging the continuance to appellant, that did not mean the trial court charged the continuance to the Commonwealth. Thus the issue of to whom the continuance should be attributed to remained "an open question." The Commonwealth argued that the delay should be attributed to appellant because the trial court effectively continued the case because appellant stated he was not going to be able to proceed to trial on August 1. The Commonwealth contended that the delay would be attributed to it if the trial court found it acted in bad faith. Because the trial court found that the Commonwealth did not act in bad faith, the continuance must be charged to appellant.

Appellant countered that it was the Commonwealth's "actions and inactions that brought us to this point" and that it was "forcing [appellant] to make a choice between his right to effective representation and his right to a speedy trial." Appellant distinguished his case from Taylor v. Commonwealth, 4 Va. App. 45, 354 S.E.2d 74 (1987). Appellant argued that the trial

court should not reach the issue of bad faith "unless there [was] a continuance by [appellant]." Here, according to appellant, he did not request a continuance; rather, it was court-ordered.

The trial court continued the hearing to August 26, 2015. The trial court ruled that appellant did not formally file a continuance on July 19. The trial court also noted that appellant previously indicated that "regardless of the [trial c]ourt's ruling . . . , that [appellant] would not be [in] a position to try the case on August 1[] due to various discovery issues." Consequently, the trial court recognized that the need for the continuance "originated [from appellant's] declaration that he would not be prepared to try the case on August 1[]." The trial court noted that what occurred was "*in pari ratione* . . . [meaning] for the like reason or by a like mode of reason," to appellant filing a motion to continue. The trial court stated that appellant framed the issue as a Hobson's choice: appellant was "required to choose between his rights to a speedy trial and his right to receive the discovery and exculpatory information in the process of a fair trial." Then, the trial court relied on Taylor. 4 Va. App. 45, 354 S.E.2d 74. The trial court did not find that the Commonwealth acted in bad faith and denied the speedy trial motions to dismiss. It noted appellant's exception. The jury trial was then set to be heard November 14-17, 2016.

Ultimately, appellant pled guilty to Count 5, and the trial court found him guilty of that offense. The jury trial occurred on the remaining charges. At the conclusion of the Commonwealth's case, appellant made a motion to strike all of the remaining indictments. The trial court granted the motion to strike as to Counts 1 and 2. Appellant then presented his evidence. He then renewed his motion to strike the remaining charges which the trial court denied. The trial court then found, consistent with the jury's verdict, appellant also guilty of grand larceny and conspiracy to commit grand larceny. Appellant filed a motion to set aside the verdicts which the trial court denied. Appellant was sentenced to twelve months for the grand

larceny conviction, three months for the conspiracy conviction, and one month for the false identification conviction.

Now comes this appeal.

ANALYSIS

On appeal,

> "[p]roper assessment and determination of the merits of a statutory speedy trial claim 'involve[s] a review of the whole record and a consideration of the trial court orders in the context of the record that comes before' the [C]ourt." Brown v. Commonwealth, 57 Va. App. 381, 389-90, 702 S.E.2d 582, 586 (2010) (quoting Baity v. Commonwealth, 16 Va. App. 497, 503, 431 S.E.2d 891, 895 (1993) (*en banc*)). "In its review, this Court will give deference to the trial court's findings of fact, but review the trial court's 'statutory interpretations and legal conclusions *de novo.*'" Id. at 390, 702 S.E.2d at 586 (quoting Sink v. Commonwealth, 28 Va. App. 655, 658, 507 S.E.2d 670, 671 (1998)).

Wallace v. Commonwealth, 65 Va. App. 80, 88, 774 S.E.2d 482, 486 (2015).

Appellant's right to a speedy trial "is one accorded him under the sixth amendment of the United States Constitution and under article I, section 8 of the Virginia Constitution. This right has been supplemented by Code §§ 19.2-241 and 19.2-243, held to be a legislative interpretation of what constitutes a speedy trial." Stephens v. Commonwealth, 225 Va. 224, 229-30, 301 S.E.2d 22, 25 (1983) (citing Flanary v. Commonwealth, 184 Va. 204, 208, 35 S.E.2d 135, 137 (1945)). Code § 19.2-241 provides

> [w]hen an indictment is found against a person for felony or when an appeal has been perfected from the conviction of a misdemeanor or traffic infraction, the accused, if in custody, or if he appear according to his recognizance, may be tried at the same term and shall be tried within the time limits fixed in [Code] § 19.2-243; provided that no trial shall be held on the first day of the term unless it be with consent of the attorney for the Commonwealth and the accused and his attorney.

Code § 19.2-243 provides that

> [w]here a district court has found that there is probable cause to
> believe that an adult has committed a felony, the accused, if he is
> held continuously in custody thereafter, shall be forever discharged
> from prosecution for such offense if no trial is commenced in the
> circuit court within five months from the date such probable cause
> was found by the district court; and if the accused is not held in
> custody but has been recognized for his appearance in the circuit
> court to answer for such offense, he shall be forever discharged
> from prosecution therefor if no trial is commenced in the circuit
> court within nine months from the date such probable cause was
> found.

Appellant has been continuously incarcerated since his March 2, 2016 preliminary hearing; therefore, the five-month time limit applies.[1]  "The five-month requirement of Code § 19.2-243 translates to 152 and a fraction days.  The Commonwealth is required to commence the trial within that time."  Turner v. Commonwealth, 68 Va. App. 72, 78, 802 S.E.2d 814, 817-18 (2017) (quoting Moten v. Commonwealth, 7 Va. App. 438, 441, 374 S.E.2d 704, 706 (1988)).  That deadline was August 3 for Count 1, as it was bound over, and August 15 for Counts 2-5, as those were handled by direct indictment.  The jury trial was initially scheduled to

---

[1] "A party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory.  Nor may a party invite error and then attempt to take advantage of the situation created by his own wrong."  Rowe v. Commonwealth, 277 Va. 495, 502, 675 S.E.2d 161, 164 (2009) (quoting Cangiano v. LSH Bldg. Co., 271 Va. 171, 181, 623 S.E.2d 889, 895 (2006)).  The Commonwealth suggested bond and a continuance as a remedy for its discovery violations on July 19.  On July 25, the trial court seemingly agreed with that suggestion.  But then, appellant argued that bond would provide him a "hollow remedy."  Appellant explained he was being held on other charges from other jurisdictions so bond would not effectively put him "at liberty."  The trial court then continued the case.  The Commonwealth never moved for bond nor did the trial court formally offer bond to appellant.  We note that appellant made this "hollow remedy" argument while being aware that if he was released on bond, that would trigger the nine-month speedy trial deadline.  See Code § 19.2-243 (stating that "if the accused is not held in custody but has been recognized for his appearance in the circuit court to answer for such offense," the nine-month deadline applies).  It appears that the Assistant Attorney General conceded in oral argument before this Court that the approbate-reprobate doctrine did not apply.  Because bond was never offered, the nine-month deadline was not triggered, and thus, appellant ultimately did not "invite error and then attempt to take advantage of the situation created by his own wrong."  Rowe, 277 Va. at 502, 675 S.E.2d at 164.

occur between August 1 and 3, 2016, dates within the speedy trial deadline. However, the Commonwealth did not prosecute appellant until November 14-17, 2016, dates well outside the speedy trial deadline.

It is important to note that "[t]he provisions of [Code § 19.2-243] shall not apply to such period of time as the failure to try the accused was caused:"

> [b]y continuance granted on the motion of the accused or his counsel, or by concurrence of the accused or his counsel in such a motion by the attorney for the Commonwealth, or by the failure of the accused or his counsel to make a timely objection to such a motion by the attorney for the Commonwealth, or by reason of his escaping from jail or failing to appear according to his recognizance.

Code § 19.2-243(4) [hereinafter enumerated continuance exception].

It is well-settled that "the burden of demonstrating that a delay in commencing trial is excused . . . lies upon the Commonwealth." Turner, 68 Va. App. at 79, 802 S.E.2d at 818 (quoting Heath v. Commonwealth, 32 Va. App. 176, 181, 526 S.E.2d 798, 800 (2000)). In this case, neither party made a motion to continue so the enumerated continuance exception does not apply.

We now consider whether an implied exception excuses the delay. "[E]xceptions stated in the [speedy trial] statute are not meant to be all-inclusive, and other exceptions of a similar nature are implied." Hudson v. Commonwealth, 267 Va. 36, 41, 591 S.E.2d 679, 682 (2004) (citing Stephens, 225 Va. at 230, 301 S.E.2d at 25). "[J]udicially recognized exceptions to the time requirement are permissible as long as they are of a similar nature and have the same rationale as the enumerated exceptions." Wallace, 65 Va. App. at 93-94, 774 S.E.2d at 488 (quoting Stephens, 225 Va. at 230, 301 S.E.2d at 25). This Court has stated that "the rationale behind the exceptions . . . is to 'provide for speedy trial exceptions in circumstances 'beyond the control of the trial [court] and the parties,' when delays are warranted to 'ensure a fair trial to

- 11 -

both the accused and the Commonwealth.'" Id. at 94, 774 S.E.2d at 489 (quoting Schwartz v. Commonwealth, 45 Va. App. 407, 426, 611 S.E.2d 631, 641 (2005)). The Virginia Supreme Court has already determined that court-ordered continuances are *in pari ratione*, of a similar nature, to those contemplated by the enumerated continuance exception. See Howard v. Commonwealth, 281 Va. 455, 461, 706 S.E.2d 885, 888 (2011) (concluding that "a continuance entered by the court *sua sponte* has the same effect as a continuance entered at the request of [appellant] or the Commonwealth" (quoting Stephens, 225 Va. at 230, 301 S.E.2d at 25)).

Considering that this was a court-ordered continuance, we now "assess[] responsibility for [the] delay in trying [appellant], [and] we must confine our review to the record that comes before us." Turner, 68 Va. App. at 80, 802 S.E.2d at 818 (quoting Cantwell v. Commonwealth, 2 Va. App. 606, 611, 347 S.E.2d 523, 525-26 (1986)). It is important to note that "Code § 19.2-243 envisions that routine and customary motions will be raised and disposed of within this [speedy trial] time provided." Id. at 79, 802 S.E.2d at 818 (quoting Adkins v. Commonwealth, 13 Va. App. 519, 523, 414 S.E.2d 188, 190 (1992)). "In contrast, where complex or last-minute motions necessitate a delay in the judicial process, the delay will be attributed to [appellant]." Id. (quoting Cantwell, 2 Va. App. at 612, 347 S.E.2d at 526). Further, "[a]n order granting a continuance speaks for itself, and the record must reflect the reason for any delay of [appellant's] trial." Id. at 80, 802 S.E.2d at 818 (quoting Godfrey v. Commonwealth, 227 Va. 460, 463, 317 S.E.2d 781, 783 (1984)). "Without anything in a court order or elsewhere in the record to show that [appellant] agreed to or concurred in the delay of his trial, or instigated a proceeding which of necessity brought about a delay of his trial, the delay must be attributed to the Commonwealth." Id. at 80-81, 802 S.E.2d at 818-19 (emphasis omitted) (quoting Cantwell, 2 Va. App. at 611, 347 S.E.2d at 526).

- 12 -

The continuance was a "routine and customary [motion]." Id. at 84, 802 S.E.2d at 820. It was not "complex" or "last minute." In addition, appellant did not concur in, agree to, or initiate the continuance. It was a court-ordered continuance. Appellant repeatedly and emphatically stated at multiple stages of the proceeding that he was not waiving his speedy trial right. However, appellant did note that he would not be prepared to proceed to trial on August 1 due to the Commonwealth's discovery failures.[2] The record reflects that the trial court's decision to continue the case was predicated on the Commonwealth's discovery failures and the resulting effect it had on appellant's ability to prepare for trial.

Notwithstanding these circumstances, the Commonwealth argues that our holding in Taylor, 4 Va. App. 45, 354 S.E.2d 74, controls. Taylor "was convicted by a jury of robbery and use of a firearm in the commission of robbery." Id. at 46, 354 S.E.2d at 75. On appeal, Taylor noted that a "sawed off shotgun and clothing believed to have been worn by the robber" were recovered from the robbery at First and Merchants Bank. Id. at 47, 354 S.E.2d at 76. Taylor requested two continuances that were granted when Taylor "discovered that [those clothes] w[ere] lost or missing[, and when] the Commonwealth [later] advised Taylor of [pertinent] information from the bank manager's wife which he wanted to investigate." Id. at 51, 354 S.E.2d at 78. Taylor argued that his convictions should be reversed because the continuances should have been attributed to the Commonwealth, and his right to a speedy trial was violated as a result. There, we found that Taylor's right to a speedy trial was not violated because "[a]bsent

---

[2] Appellant argues that the Commonwealth's failures created a "Hobson's choice." We note that a "Hobson's choice" is "no real choice at all-the only options being to either accept or refuse the offer that is given to you . . . . [It] is different from a true choice between two (or more) equally agreeable or disagreeable options." Herron v. Commonwealth, 55 Va. App. 691, 696 n.2, 688 S.E.2d 901, 903 n.2 (2010). Appellant is ultimately forced to choose between asserting his right to a speedy trial or his right to effective assistance of counsel. Appellant was placed in this predicament by no fault of his own but because of the Commonwealth's discovery breaches. Id. at 704, 688 S.E.2d at 907.

a showing of bad faith on the part of the Commonwealth, we [were] unwilling to impute the continuances to the Commonwealth." Id.

The threshold issue in determining to whom the delay should be attributed now becomes whether or not the Commonwealth acted in bad faith. On brief and at argument, appellant asserted that we do not reach this part of the analysis because there is no enumerated exception and no implied exception that excuses the delay. As we previously stated, court-ordered continuances are considered an implied exception pursuant to Howard. 281 Va. at 460-61, 706 S.E.2d at 888. Thus, we turn to the framework provided in Taylor. Appellant correctly points out that he did not move for a continuance in this case. However, the trial court ultimately stated in ruling on appellant's speedy trial motions on August 26 that it continued the case due to appellant's statements that he would not be ready to proceed to trial due to the Commonwealth's failures. Then, the trial court expressly ruled that the Commonwealth did not act in bad faith. That determination of the trial court has not been contested, so it is now the "law of the case." Lee v. Spoden, 290 Va. 235, 253, 776 S.E.2d 798, 808 (2015). We are further constrained by the doctrine of interpanel accord to follow the framework set forth in Taylor.[3] Consistent with Taylor, even though the Commonwealth's discovery failures necessitated the court-ordered continuance, because the trial court ruled that the Commonwealth did not act in bad faith, we cannot impute the continuance to the Commonwealth. Accordingly, appellant's right to a speedy trial was not violated.

---

[3] See Prekker v. Commonwealth, 66 Va. App. 103, 110, 782 S.E.2d 604, 607 (2016) (noting that "[u]nder the interpanel accord doctrine, [a subsequent panel] lack[s] the authority to revisit" prior published opinions of the Court of Appeals (quoting Butler v. Commonwealth, 64 Va. App. 7, 12, 763 S.E.2d 829, 832 (2014))). However, according to Startin v. Commonwealth, 56 Va. App. 26, 39 n.3, 690 S.E.2d 310, 316 n.3 (2010) (en banc), while binding on three-judge panels, published opinions of the Court of Appeals "do not bind the Court sitting en banc." Id.

We note that when a trial court conclusively finds that the Commonwealth did not act in bad faith even if the Commonwealth may have been party to creating a Hobson's choice for appellant, that no violation of the statutory speedy trial requirements is implicated thereby justifying a dismissal of the charges.

CONCLUSION

The continuance was court-ordered; an implied exception to Code § 19.2-243. Here, in the context of this Court's speedy trial analysis under Taylor, we are also bound by the trial court's determination that there was no bad faith by the Commonwealth. That determination was not appealed, and our assessment and determination of the merits of this claim, review of the whole record, and consideration of the trial court's orders in the context of the record that come before this Court direct the result we reach. Accordingly, we affirm the trial court.

Affirmed.